749 P.2d 93

Kenneth L. **MEYER,**
**Petitioner–Appellee,**

v.

Honorable George **JONES, Judge of the**
**Metropolitan Court,**
**Respondent–Appellant.**

No. 16640.

Supreme Court of New Mexico.

Feb. 2, 1988.

Rehearing Denied Feb. 18, 1988.

Hal Stratton, Atty. Gen., Tony Tupler, Tracy Hughes, Asst. Attys. Gen., Santa Fe, for appellant.

Kenneth S. McDaniel, Albuquerque, for appellee.

## OPINION

WALTERS, Justice.

Kenneth L. Meyer, charged in the Bernalillo County Metropolitan Court with a first offense of driving while under the influence of an intoxicating liquor, demanded a jury trial. The respondent, Judge Jones, denied the request for a jury trial, and defendant petitioned the district court for an alternative writ of mandamus to compel a trial by jury or to prohibit the lower court from proceeding to trial before the petition could be heard. The district court ultimately granted a permanent writ, requiring that defendant be allowed a jury trial. Judge Jones appealed; we granted a stay of proceedings pending our disposition of the matter.

Pursuant to NMSA 1978, Section 66–8–102(D) (Cum.Supp.1986), the penalty for a first conviction of driving while intoxicated (DWI) is confinement of at least thirty but not more than ninety days, or a fine of at least $300 but not more than $500, or both a fine and imprisonment. In addition, a first-offense DWI conviction may carry a probationary sentence exceeding ninety days but no longer than three years if any part of the confinement or fine is suspended. *Id.* With respect to criminal actions, if the penalty does not exceed ninety days' imprisonment or is a fine or forfeiture of a license, the metropolitan court statutes provide that the action shall be tried by the judge without a jury. NMSA 1978, § 34–8A–5(B)(1) (Repl.Pamp.1981).

The district court found, however, that Section 34–8A–2 governed in its provision that for all purposes of state law a metropolitan court is a magistrate court, and that under NMSA 1978, Section 35–8–1, the right to trial by jury exists for all criminal actions (with the exception of contempt) over which the magistrate court has jurisdiction. It therefore concluded that Meyer was entitled to a jury trial, and that Section 34–8A–5(B)(1) unconstitutionally violated the equal protection clauses of the state and federal constitutions in that it denied metropolitan court defendants the same right to trial by a jury for petty misdemeanors as was granted to defendants in magistrate courts elsewhere in the state. The district court further specifically held that because a sentence for conviction of a first-offense DWI could deprive a defendant of his liberty for more than six months through the imposition of a probationary period of up to three years, the New Mexico and United States Constitutions guaranteed the right to a jury trial for all state statute DWI charges in all state courts.

In *Vallejos v. Barnhart,* 102 N.M. 438, 439, 697 P.2d 121, 122 (1985), we entertained an appeal which claimed, *inter alia,* Section 34–8A–5(B) violated the defendants' right to equal protection because the statute denied the defendants the right to a trial by jury in the Metropolitan Court of Bernalillo County when defendants

charged with the same offense could obtain jury trials in magistrate courts elsewhere in the state. Without reaching the equal protection issue, we held there that the defendants were entitled to a trial by jury because they faced an aggregate term of imprisonment exceeding ninety days. *Id.* at 440–41, 697 P.2d at 123–24. Because we did not reach the equal protection issue in *Vallejos*, we discuss it here as a matter of first impression.

■ We address first, however, the trial court's findings that a potential probation beyond six months under Section 66–8–102(D) automatically triggers a "deprivation of liberty/serious offense" analysis that would require allowance of a jury trial. In *Frank v. United States*, 395 U.S. 147, 151–52, 89 S.Ct. 1503, 1506–07, 23 L.Ed.2d 162 (1969), the United States Supreme Court declined to characterize a sentence of five years' probation as constituting a "serious offense" which, under *Duncan v. Louisiana*, 391 U.S. 145, 158–59, 88 S.Ct. 1444, 1452–53, 20 L.Ed.2d 491 (1968), would warrant the right to a jury trial. In so ruling, the *Frank* court commented: "Probation is, of course, a significant infringement of personal freedom, but it is certainly less onerous a restraint than jail itself." 395 U.S. at 151–52, 89 S.Ct. at 1506–07. Indeed, each time the Supreme Court has discussed the distinction between serious and petty offenses in the right-to-jury-trial context, it has analyzed the authorized penalty as meaning the length of imprisonment. The term of a potential probationary period has never been considered. *See, e.g., Muniz v. Hoffman*, 422 U.S. 454, 476–77, 95 S.Ct. 2178, 2190–91, 45 L.Ed.2d 319 (1975) (contempt is not always serious offense when fine exceeds $500.00 but no prison term imposed); *Taylor v. Hayes*, 418 U.S. 488, 496, 94 S.Ct. 2697, 2702, 41 L.Ed.2d 897 (1974) (in absence of legislative authorization of serious penalties for contempt, state may try any contempt without a jury if state determines not to impose sentence longer than six months); *Codispoti v. Pennsylvania*, 418 U.S. 506, 512, 94 S.Ct. 2687, 2691, 41 L.Ed.2d 912 (1974) (contemnor not entitled to jury trial simply because of strong possibility that he will receive substantial term of imprisonment upon conviction regardless of punishment actually imposed); *cf. Baldwin v. New York*, 399 U.S. 66, 69, 90 S.Ct. 1886, 1888, 26 L.Ed.2d 437 (1970) (no offense is petty if authorized penalty is more than six months' imprisonment); *Duncan*, 391 U.S. at 161–62, 88 S.Ct. at 1453–54 (crime that carries possible penalty of two years in prison is serious offense).

Because the defendants in *Vallejos* faced an aggregate sentence in metropolitan court of confinement in excess of six months for multiple traffic violations, our holding that the defendants were entitled to a jury trial pursuant to Section 34–8A–5(B)(2) accords with the analysis of the period of potential deprivation of liberty as the basis for determining the "petty vs. serious" nature of the offense, and the attendant right to jury trial. We are not persuaded that a potential period of probation of more than six months presents the degree of liberty deprivation that would convert a petty offense to the nature of such a serious offense as would trigger the right to a jury trial.

With regard to petitioner's equal protection claim, it was said in *Garcia v. Albuquerque Public Schools Board of Education*, 95 N.M. 391, 622 P.2d 699 (Ct.App. 1980), *cert. quashed*, 95 N.M. 426, 622 P.2d 1046 (1981), that the standard for review of an equal protection claim is the same under both the federal and state constitutions. It is pointed out in the recent case of *Farley v. Engelken*, 241 Kan. 663, 740 P.2d 1058 (1987), that the United States Supreme Court has recognized and applied three varying standards (or "levels of scrutiny") in assessing equal protection claims. *Cf. Torres v. Village of Capitan*, 92 N.M. 64, 69, 582 P.2d 1277, 1282 (1978) ("The Supreme Court of the United States has adopted two different tests * * * to statutes attacked on the basis of the equal protection clause").

*McGowan v. Maryland*, 366 U.S. 420, 425–26, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393 (1961), applied the least strict scrutiny: the reasonable basis test ("The constitutional safeguard is offended only if the classifica-

tion rests on grounds wholly irrelevant to the achievement of the State's objective * * *. A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it").

At the next step, applicable to "quasi-suspect" classifications, the "heightened" or "middle-level" scrutiny (*Farley*, 241 Kan. at 669, 740 P.2d at 1062–63), the State must show a greater justification for classification, and it must demonstrate a direct relationship between the classification and furtherance of a legislative purpose. *See Crowe by and through Crowe v. Wigglesworth*, 623 F.Supp. 699, 703 (D.Kan.1985), and Supreme Court cases cited therein and in *Farley*, 241 Kan. at 669, 740 P.2d at 1063.

The most stringent analysis is termed "strict scrutiny" and it is applied when the challenged legislation affects the exercise of a fundamental right expressly or implicitly guaranteed by the constitution and concerns suspect classifications such as race, ancestry, and alienage. *Farley*, 241 Kan. at 669–70, 740 P.2d at 1063. Such an approach strips the statute of any presumption of constitutionality, and requires the state to establish the compelling governmental interest which necessarily justifies the classification. *Crowe*, 623 F.Supp. at 702.

■ We have already discussed the non-applicability of any claim to a constitutional right to jury trial for a petty offense. Consequently, neither the heightened nor strict scrutiny tests are to be applied, because the classification is not suspect and there is no fundamental right of jury trial that is affected.

Meyer disputes any contention that the statutory discrimination here is rendered permissible on the basis of a geographical distinction. The Supreme Court has said that the equal protection clause protects "equality between persons as such, rather than between areas," and that, under the equal protection clause, "territorial uniformity is not a constitutional prerequisite." *McGowan*, 366 U.S. at 427, 81 S.Ct. at 1106; *Missouri v. Lewis*, 101 U.S. (11 Otto) 22, 30–31, 25 L.Ed. 989 (1879). Even

though this case concerns treatment of the same issue in different political subdivisions of the state differently, *i.e.*, a legislative grant of jury trial to all New Mexico residents in all magistrate courts outside Bernalillo County for violation of a state statute, but denial of a jury trial in magistrate court in Bernalillo County (Section 34–8A–5(B)(1)) for violation of the same state statute, we know that exact equality is not mandated by the fourteenth amendment to the federal constitution. *Norvell v. Illinois*, 373 U.S. 420, 423, 83 S.Ct. 1366, 1368, 10 L.Ed.2d 456 (1963). Only "invidious discrimination" (*Ferguson v. Skrupa*, 372 U.S. 726, 732, 83 S.Ct. 1028, 1032, 10 L.Ed.2d 93 (1963)), that which is arbitrary, irrational and not reasonably related to a legitimate purpose (*McLaughlin v. Florida*, 379 U.S. 184, 191, 85 S.Ct. 283, 287, 13 L.Ed.2d 222 (1964)), is forbidden by the equal protection clause.

Since the decision in the district court was based on the comparable right contained in the New Mexico Constitution, art. II, § 18, as well as upon the federal constitutional right, our decision need not be controlled by the Supreme Court's interpretation of the federal counterpart. *See People v. Disbrow*, 16 Cal.3d 101, 127 Cal.Rptr. 360, 545 P.2d 272 (1976). But New Mexico has long applied the same tests of reasonableness and relationship as has the United States Supreme Court. *See, e.g., State v. Thompson*, 57 N.M. 459, 260 P.2d 370 (1953) (statute exempting railroad employees from criminal charges for removing cattle hides from carcasses not arbitrary or unreasonable classification); *Davy v. McNeill*, 31 N.M. 7, 240 P. 482 (1925) (exemption of prior irrigation enterprises from law establishing irrigation districts not arbitrary or unreasonable). We think, therefore, that federal decisions regarding geographic distinctions are worthy of consideration in determining Meyer's challenge on that ground.

Meyer cites various jurisdictions in support of his position, *e.g., State ex rel. White v. Board of County Comm'rs*, 140 Kan. 744, 749–50, 39 P.2d 286, 289–90 (1934) (statute providing for unique and

varying scheme whereby compensation for special prosecutors was fixed by court and taxed against convicted defendants held invalid under state and federal constitutions); *State v. Fowler*, 193 N.C. 290, 293, 136 S.E. 709, 711 (1927) (denouncing as arbitrary and unreasonable the imposition in one county of any kind of punishment which is different from that which is prescribed under general state law to all who might be guilty of same offense, and holding statute unconstitutional under state and federal equal protection clauses); *State ex rel. Hamby v. Cummings*, 166 Tenn. 460, 463, 63 S.W.2d 515, 515–16 (1933) (holding that Tennessee constitution secures right to make contracts, and anti-nepotism statute depriving citizens in one county of a right enjoyed by citizens in other counties of state is invalid); *Ex parte Ferguson*, 137 Tex.Cr.R. 494, 498, 132 S.W.2d 408, 410–11 (1939) (invalidating under equal protection clauses of state and federal constitutions state statute allowing one county to assess much greater and more severe penalty than another county for identical offenses).

A body of United States Supreme Court cases supports the proposition that in matters concerning concentrations of population, a state government may enact in one part of the state "substantive restrictions and variations in [criminal] procedure that would differ from those elsewhere in the state." *Salsburg v. Maryland*, 346 U.S. 545, 553, 74 S.Ct. 280, 285, 98 L.Ed. 281 (1954); *see also North v. Russell*, 427 U.S. 328, 338–39, 96 S.Ct. 2709, 2714, 49 L.Ed.2d 534 (1976) (state two-tier trial court system, permitting lay judges to preside in some cities while requiring law-trained judges in others, does not violate either fourteenth amendment due process or equal protection); *Hayes v. Missouri*, 120 U.S. 68, 72, 7 S.Ct. 350, 30 L.Ed. 578 (1887) (systems of criminal procedure in cities or rural districts may be different without violating fourteenth amendment). As long as the legislation treats equally all people under similar circumstances within a given section of a state, the legislation has been held not to violate the equal protection clause of the fourteenth amendment. *See North*, 427 U.S. at 338, 96 S.Ct. at 2714 (equal protection clause not violated when all people within a given city or within cities of same size treated equally); *Lewis*, 101 U.S. at 31 (no person or class of persons shall be denied same protection of law enjoyed by other persons or other classes in same place under like circumstances).

The Court, in *Hayes v. Missouri*, held that a state statute allowing the state fifteen peremptory challenges in capital cases tried in cities with a population in excess of 100,000 persons and not in cities with a smaller population did not violate the equal protection clause of the fourteenth amendment. 120 U.S. at 72, 7 S.Ct. at 352.

In *Missouri v. Lewis*, the complaint was that a state procedure which denied litigants in the city of St. Louis the right to appeal to the Supreme Court of Missouri, but afforded that privilege to litigants in other counties of the state, was unconstitutional as violative of the fourteenth amendment's equal protection clause.[1] *Lewis*, 101 U.S. at 29. The Court denied that any equal protection violation existed "if all persons within the territorial limits of their respective jurisdictions have an equal right, in like cases and under like circumstances." *Id.* at 30. As an illustration of its reasoning, the *Lewis* court observed that "[w]here part of a State is thickly settled, and another part has but few inhabitants, it may be desirable to have different systems of judicature for the two portions—trial by jury in one, for example, and not in the other." *Id.* at 32. The Court remarked, additionally:

If the State of New York, for example, should see fit to adopt the civil law and its method of procedure for New York City and the surrounding counties, and the common law and its method of procedure for the rest of the State, there is nothing in the Constitution of the United States to prevent its doing so. This would not, of itself, within the meaning of the Fourteenth Amendment, be a deni-

1. State procedure provided for a separate court of appeals to hear appeals of certain matters from trial courts in St. Louis. *Lewis*, 101 U.S. at 29.

al to any person of the equal protection of the laws. If every person residing or being in either portion of the State should be accorded the equal protection of the laws prevailing there, he could not justly complain of a violation of the clause referred to. For, as before said, it has respect to persons and classes of persons.

101 U.S. at 31. *United States ex rel. Buonoraba v. Commissioner of Corrections,* 316 F.Supp. 556, 566 (S.D.N.Y.1970), contains an instructive discussion on the constitutionality of statutes which classify according to geographical interests.

 We are persuaded that, because of the legislature's requirement that magistrate judges in metropolitan court be attorneys and magistrates elsewhere throughout the state need not meet that qualification, the disallowance of juries in metropolitan court is not arbitrary, unreasonable nor

unrelated to a legitimate legislative purpose.[2] All persons within Bernalillo County are treated equally, and the classification may be justified on grounds of judicial economy, as well as on the advanced judicial qualifications of the magistrates presiding over those cases.

The judgment of the district court is reversed and the order of the metropolitan court is reinstated.

IT IS SO ORDERED.

STOWERS and RANSOM, JJ., concur.

---

**2.** The geographic distinction disappears under NMSA 1978, Sections 34–8A–6(C) (Repl.Pamp. 1981) and 35–13–2(A) (Cum.Supp.1987), which provide that all appeals to the district court from either a magistrate or metropolitan court are de novo proceedings, and defendant may demand a jury trial.