1998-NMSC-031

965 P.2d 305

Lawrence TRUJILLO, Plaintiff–Appellee,

v.

CITY OF ALBUQUERQUE, et al.,
Defendants–Appellants.

Lisa M. ROGERS and the First National
Bank of Albuquerque as Conservator for
the Estate of Crystal Rogers, a minor,
Plaintiffs–Appellants,

v.

CITY OF ALBUQUERQUE and Richard
Aragon, Defendants–Appellees.

Nos. 18296, 19118.

Supreme Court of New Mexico.

Sept. 8, 1998.

Duhigg, Cronin & Spring, David Duhigg, Helena Gorochow, Leon Thomas, Albuquerque, for Plaintiff–Appellee Trujillo.

Freedman, Boyd, Daniels, Peifer, Hollander, Guttman & Goldberg, Joseph Goldberg, Carpenter & Chavez, William H. Carpenter, David J. Stout, Albuquerque, for Plaintiff–Appellee Rogers.

Butt, Thornton & Baehr, Emily A. Franke, John A. Klecan, Albuquerque, for Defendant–Appellant City of Albuquerque.

Keleher & McLeod, P.A., Charles Pharris, Kurt Wihl, Albuquerque, for Defendant in Intervention, State of New Mexico, Risk Management Division.

Randall D. Van Vleck, Santa Fe, Stadtmauer Bailken, L.L.P., Steven Barshov, New York, NY, for Defendant in Intervention New Mexico Municipal League, Inc.

Miller, Stratvert & Torgerson, P.A., Alice Tomlinson Lorenz, Nancy Augustus, Albuquerque, for Amicus Curiae N.M. Medical Society.

Rodey, Dickason, Sloan, Akin & Robb, P.A., Edward Ricco, Albuquerque, for Amicus Curiae Regents of University of New Mexico.

Coppler & Mannick, P.C., Gerald A. Coppler, Santa Fe, for Amicus Curiae New Mexico Public Schools Insurance Authority.

Modrall, Sperling, Roehl, Harris & Sisk, P.A., Arthur D. Melendres, Stuart R. Butzier, Dolores R. Klingbeil, Albuquerque, for Amicus Curiae Albuquerque Public Schools.

*OPINION*

BACA, Justice.

{1} These consolidated appeals involve separate tort claims brought against the City of Albuquerque (City) pursuant to the New Mexico Tort Claims Act (TCA), NMSA 1978, § 41-4-1 to 4-27 (1976, as amended through 1996). Plaintiffs from both cases challenged the constitutionality of the damages limitation in Section 41-4-19(A) of the TCA, arguing that the cap violates their rights of equal protection under the New Mexico and United States Constitutions.

{2} In considering the constitutionality of the cap, it first is necessary to determine the applicable analysis for this type of equal protection challenge. In a previous appeal of this case before this Court, we adopted an intermediate scrutiny equal protection analysis. *See Trujillo v. City of Albuquerque,* 110 N.M. 621, 623, 798 P.2d 571, 573 (1990) [hereinafter *Trujillo I* ]. After lengthy reexamination of the parties' arguments and consideration of law-of-the-case and stare decisis principles, this Court now reverses that deci-

sion. We hold that the damages cap in this case is subject to rational basis scrutiny, and rational basis will be the constitutional test applied to cap challenges of this nature from this point forward.

{3} However, the parties in this case justifiably relied on the constitutional standard articulated in *Trujillo I*, a standard that perhaps was unduly and artificially narrowed in *Trujillo v. City of Albuquerque*, 119 N.M. 602, 603, 893 P.2d 1006, 1007 (1995) [hereinafter *Trujillo II* ]. Fairness requires that this Court adhere to the standard under which the current parties were instructed to litigate this dispute. Thus, with regard to the current parties only, this Court employs a certain form of intermediate scrutiny in its constitutional analysis. In doing so, we agree that the trial court correctly held the TCA cap to be unconstitutional. However, this Court limits this holding to the case before us, holding that in all subsequent cases of this nature, courts shall apply a rational basis standard in analyzing constitutional challenges to the TCA cap.

I.

{4} The TCA damages cap in New Mexico, as applied to the injuries occurring in these cases in 1984 and 1985, limited recovery to $300,000 per occurrence. *See* NMSA 1978, § 41–4–19(A)(2) (1983). This appeal arises from two consolidated personal injury actions filed against the City. In the first case, Lawrence Trujillo sued the City after his truck collided with a crane operated by a City employee. After a non-jury trial, the district court found that the City had failed to maintain the crane properly and that the employee had operated the crane negligently. The trial judge held *inter alia* that the TCA cap was unconstitutional, awarding $547,-905.80 in damages to Trujillo.

{5} The second case also arose from injuries sustained in a collision. The accident occurred when Plaintiff Lisa Rogers failed to see a stop sign, partially hidden by foliage, at the entrance of an intersection. Rogers en-

tered the intersection without stopping, and a vehicle driven by an off-duty City police officer struck Rogers' car. Rogers suffered some injuries, and her minor daughter, a passenger in the car, was permanently paralyzed. After Rogers sued, a jury apportioned negligence in the case between the accident participants and those responsible for maintenance of the property and areas near the intersection. It awarded Rogers $400,000 and her daughter $8.3 million in damages from the City, both amounts exceeding the liability of the City under the TCA cap. At a subsequent post-trial hearing, the district judge reduced the award[1] and concluded that the TCA cap was unconstitutional.

{6} Upon review of Trujillo's case, the Court of Appeals reversed the trial court's decision and held that the TCA cap did not violate Trujillo's equal protection rights. Subsequently, the Supreme Court granted certiorari to review the decision. In Rogers' appeal, the Court of Appeals, without deciding the other issues, certified the question of the TCA cap's constitutionality to the Supreme Court.

{7} This Court consolidated the appeals and entered its opinion on August 27, 1990. In the opinion, the Supreme Court first adopted an intermediate scrutiny equal protection analysis of the TCA cap's constitutionality. *See Trujillo I*, 110 N.M. at 623, 798 P.2d at 573. Under intermediate scrutiny, the City would be required to demonstrate that: (1) the cap serves an important government interest, and (2) a substantial relationship exists between the cap and the important government interest. *See id.* at 624 n. 2, 798 P.2d at 574 n. 2. Although the *Trujillo I* Court arrived at a conclusion on the applicable standard of constitutional scrutiny, the Justices concluded that the factual record was inadequate for a conclusion of the claims, and therefore, the Court remanded the case to the district court for further factual development.[2] *See id.* at 632, 798

---

1. The court reduced Rogers' judgment to $290,-000 and her daughter's award to $6,017,500.

2. Near this time, the Plaintiffs filed a motion with the Supreme Court seeking determination

of the non-constitutional issues on appeal. Soon thereafter, the Court entered an order affirming all issues except the finding of multiple occurrences. It also directed payment of damages up

P.2d at 582. In determining the importance of the government interest, the Court requested evidence on "the nature and magnitude" of the risk that the burden on public coffers would be increased by elimination of the TCA cap. *Id.* at 631, 798 P.2d at 581. Particularly, the Court asked for information concerning the relative cost of "the claims of [catastrophically injured] tort victims in the aggregate as compared to the aggregated claims of those with individual claims of $300,000 or less." *Id.* at 630, 798 P.2d at 580. Second, with regard to the "substantial relationship" prong of the intermediate scrutiny analysis, the Court wanted information on whether the increased costs would create a "real cost crisis" that would affect the provision of important government services. *Id.* at 628–29, 798 P.2d at 578–79.

{8} During the subsequent remand hearing of approximately three weeks, the parties developed and presented evidence to the district court related to the operation and effect of the cap with respect to the City. The evidence included testimony from twelve witnesses and the admission of over 200 documentary exhibits. The district court denied attempts to include empirical evidence concerning New Mexico municipalities other than Albuquerque. After the hearing, the judge submitted his findings and conclusions, holding that the City had met its burden of demonstrating that the TCA cap was substantially related to an important City interest.

{9} On September 6, 1994, the Supreme Court filed a divided plurality opinion in review of the evidentiary hearing. The opinion affirmed the holding that the TCA cap was constitutional under the limitations pursuant to which the case was tried. However, after a rehearing on the case, the Court withdrew its plurality opinion. In the subsequent Order, the Court noted that the trial court had erred in excluding evidence from other municipalities and ordered a remand for another evidentiary hearing. *See Trujillo II*, 119 N.M. at 603, 893 P.2d at 1007. The Court stated that the City's burden upon remand

to the amount of the TCA cap. The City made payment in partial satisfaction of the judgment

would be to establish a substantial relationship between the TCA cap and the protection of the public fisc as "an indivisible and statewide whole," both at the time the legislature enacted the cap and at the time the causes of action accrued. *Id.*

{10} Upon remand, the Risk Management Division of the State of New Mexico and the New Mexico Municipal League intervened as defendants. Plaintiffs subsequently filed a motion asking the district court to set the scope of the proceedings for the second evidentiary hearing. The district court limited the evidentiary hearing to evidence within the 1976–77 and 1984–85 time frames, and the Supreme Court, upon challenge by the parties, affirmed these parameters.

{11} The second evidentiary hearing occurred from April 28, 1997, through May 8, 1997, and again, the parties submitted substantial testimonial and documentary evidence. The district court rendered its findings of fact and conclusions of law soon thereafter, holding that the limit on the Plaintiffs' damages was unconstitutional. The court also awarded post-judgment interest, but the award of interest was withdrawn after rehearing on the issue. Plaintiffs then filed their notice of appeal on the case, and Defendants filed a notice of cross-appeal soon thereafter.

{12} In this appeal, we first consider whether this Court's use of intermediate scrutiny was appropriate for the equal protection analysis. After careful reconsideration of applicable legal and policy arguments on the issue, we hold that the *Trujillo I* Court should not have adopted intermediate scrutiny for the analysis of these claims. Instead, the rational basis analysis should apply to comparable cases in the future.

{13} Despite this adoption of the rational basis test, the law-of-the-case doctrine and principles of equity require application of intermediate scrutiny, as that standard was posited in our previous orders in this case, with regard to the parties now before us. Applying that form of intermediate scrutiny, we uphold the district court's ruling, conclud-

on April 12, 1991.

ing that the City failed to meet its burden of proving a substantial relationship between the cap and an important government interest during the limited time frames our prior orders held to be relevant.

## II.

{14} In *Meyer v. Jones,* 106 N.M. 708, 710–11, 749 P.2d 93, 95–96 (1988), this Court noted that when a statute is attacked on equal protection grounds, one of three possible analyses generally is applied to determine the statute's constitutionality: (1) rational basis scrutiny, (2) intermediate scrutiny, or (3) strict scrutiny. Generally, when social and economic legislation is challenged on equal protection grounds, the legislation is considered presumptively valid and is subjected to the rational basis test. *See Española Hous. Auth. v. Atencio,* 90 N.M. 787, 788–89, 568 P.2d 1233, 1234–35 (1977); *McGowan v. Maryland,* 366 U.S. 420, 425, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961). To successfully challenge a statute under the rational basis test, a plaintiff is required to show that the statute's classification is not rationally related to the legislative goal. *See Richardson v. Carnegie Library Restaurant, Inc.,* 107 N.M. 688, 694, 763 P.2d 1153, 1159 (1988).

{15} Intermediate scrutiny is the next level of equal protection analysis after rational basis scrutiny. The analysis is more probing and requires higher evidentiary burdens than rational basis scrutiny. For a statute to pass constitutional muster under intermediate scrutiny, the government must demonstrate that the classification is substantially related to an important government interest. *See id.,* 107 N.M. at 693–94, 763 P.2d at 1158–59. The intermediate scrutiny standard is used to assess legislative classifications "infringing important but not fundamental rights, and involving sensitive but not suspect classes." *Id.* at 693, 763 P.2d at 1158. For example, classifications based on gender and illegitimacy traditionally have been measured under intermediate scrutiny. *See City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 440–41, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985).

{16} The final level of equal protection analysis is strict scrutiny. Strict scrutiny involves the closest analysis and highest evidentiary burdens. Challenged legislation garners strict scrutiny if it affects the exercise of a fundamental right or a suspect classification such as race or ancestry. *See Meyer,* 106 N.M. at 711, 749 P.2d at 96. When a statute involving such rights or classifications is challenged, the government must demonstrate a compelling state interest for the challenged classification. *See State v. Edgington,* 99 N.M. 715, 718, 663 P.2d 374, 377 (Ct.App.1983).

{17} In *Trujillo I,* this Court's essential holding was that the constitutionality of the TCA cap must be decided under intermediate scrutiny equal protection analysis. *See Trujillo I,* 110 N.M. at 623, 798 P.2d at 573; *see also Richardson,* 107 N.M. at 696, 763 P.2d at 1161. Thus, the City had to prove two elements: 1) that an important government interest was involved, and 2) that the TCA cap was substantially related to that important government interest. *See id.* This Court, mindful of the stare decisis and law-of-the-case ramifications, now rejects the standard for equal protection analysis applied in *Trujillo I* and concludes that rational basis scrutiny is the appropriate analysis to be employed hereafter in all equal protection challenges to the TCA cap.

## A.

{18} In adopting heightened scrutiny in its review of the TCA cap, the *Trujillo I* Court reasoned that a tort victim's full recovery is implicitly protected by the right of access to the courts under the New Mexico Constitution. *See* N.M. Const. art. II, § 18; *Trujillo I,* 110 N.M. at 623, 798 P.2d at 573. The Court relied heavily upon *Richardson. See generally* 107 N.M. at 692–99, 763 P.2d at 1157–64. In *Richardson,* this Court reviewed whether a damages-cap statute could limit the damages for which dramshop owners are liable. *See id.* at 690, 763 P.2d at 1155. In striking down the statute, the Court reasoned that the damage limitation infringed upon the tort victim's interest in full recovery of damages that is implicitly

protected under the state constitutional right of access to the courts. *See id.* at 692, 763 P.2d at 1157. The Court subjected the damage limitation statute to intermediate scrutiny on the constitutional question, concluding that the statute's proponents failed to demonstrate that the statute was substantially related to an important government interest. *See id.* at 699, 763 P.2d at 1164.

{19} Although we have no quarrel with *Trujillo I* and *Richardson's* recognition of the principle of equal access to the courts, we disagree with the over extension of that principle. Particularly, this Court differs with *Trujillo I's* implicit rationale that the right of access to the courts is synonymous with the purported right of full recovery against the state and its political subdivisions. We hold that the constitutional principles that protect access to the courts are not implicated by the TCA cap to a point that would require raising the level of scrutiny.

{20} New Mexico's guarantee of access to the courts does not create a right to unlimited government tort liability. Article II, Section 18 of the New Mexico Constitution states in relevant part, "No person shall be deprived of life, liberty or property without due process of law; nor shall any person be denied equal protection of the laws." N.M. Const. art. II, § 18. From this general principle, this Court has recognized an implicit right of access to the courts. *See Richardson,* 107 N.M. at 692, 763 P.2d at 1157.

■ {21} Access to the courts encompasses the ability of a party to have access to the judiciary to resolve legal claims. *See State v. DeFoor,* 824 P.2d 783, 791 (Colo. 1992) (en banc); *Doe v. Schneider,* 443 F.Supp. 780, 787 (D.Kan.1978). Nevertheless, such access is not boundless. *See Jiron v. Mahlab,* 99 N.M. 425, 426, 659 P.2d 311, 312 (1983). A right of access to the courts does not guarantee the continued existence of a cause of action or remedy. *See Hartford Fire Ins. Co. v. Lawrence, Dykes, Goodenberger, Bower & Clancy,* 740 F.2d 1362 (6th Cir.1984). Furthermore, the fact that a plaintiff is denied an adequate remedy when suing the state does not constitute a violation

of one's right to court access. *See DeFoor,* 824 P.2d at 791.

{22} In *DeFoor,* a Colorado state highway worker displaced a boulder while working on a roadway with heavy machinery. *See id.* at 785. The boulder rolled and struck a tour bus, killing nine bus passengers and injuring twenty-five. When the tourists sued, they challenged the constitutionality of Colorado's cap on damage awards against the state. *See id.* They argued that the cap violated their right of equal court access since it limited recovery to $400,000 for any single occurrence injuring more than two people. *See id.* at 786. The Colorado Supreme Court, sitting en banc, held that the limitation was not a violation of the right of access to the courts. *See id.* It reasoned that the Colorado constitutional court-access provision did not "purport to control the scope or substance of remedies afforded to Colorado litigants." *Id.* at 791. The provision merely "assures litigants 'that courts of justice shall be open to every person and a speedy remedy afforded for every injury.'" *Id.* (quoting, *Curtiss v. GSX Corp.,* 774 P.2d 873, 876 (Colo.1989)).

■ {23} We conclude that the right of access to the courts does not create a right to unlimited government tort liability. First, the rationale in *DeFoor* applies with equal force to the issues here. Like *DeFoor,* nothing within New Mexico's constitutional provision itself purports to control the scope or substance of remedies afforded. Because the TCA cap in New Mexico does not prevent a plaintiff from utilizing the courts to prosecute a claim of negligence, there is no state constitutional impairment of the right of access. Second, the broad scope of government duties suggests that a government's potential liabilities should be treated differently than those of other defendants. In drafting the TCA cap, the New Mexico Legislature considered such issues:

The legislature recognizes the inherently unfair and inequitable results which occur in the strict application of the doctrine of sovereign immunity. On the other hand, the legislature recognizes that while a private party may readily be held liable for his torts within the chosen ambit of his activity, the area within which the government has the power to act for the public good is almost without limit, and therefore

government should not have the duty to do everything that might be done. Consequently, it is declared to be the public policy of New Mexico that governmental entities and public employees shall only be liable within the limitations of the Tort Claims Act....

NMSA 1978, § 41–4–2(A) (1976). In addition, this Court has recognized the substantial policy reasons that support limiting damage awards against the government. For example, in *Marrujo v. New Mexico State Highway Transp. Dep't.*, 118 N.M. 753, 887 P.2d 747 (1994), this Court upheld the constitutionality of the TCA's strict notice period under the rational basis test and noted that TCA claims are entitled to different treatment than claims involving private parties:

> The legislature never intended government and private tortfeasors to receive identical treatment. The liabilities of the private tortfeasor in no way compare with the potential liabilities of the [Highway] Department for the multitude of daily injuries and deaths on the State's highways. The duty of care of a single motorist is not analogous to the all but impossible task of monitoring the countless conditions that determine the safety of the state highways.... The right to sue the government is a statutory right and the legislature can reasonably restrict that right.

*Marrujo*, 118 N.M. at 760–61, 887 P.2d at 754–55 (citations omitted). Thus, as a matter of policy, the New Mexico Legislature and this Court have recognized the unique nature of the duties adopted by the state that set it apart from other litigants.

{24} Third, the history of statutorily created causes of action against government entities strongly suggests that damage limitations are permissible. Sovereign immunity was recognized for many years as a common law defense to claims against government entities in New Mexico. *But see Hicks v. State,* 88 N.M. 588, 590, 544 P.2d 1153, 1155 (1975) (eliminating the common law defense of sovereign immunity in tort claims against the government, to which the legislature responded by enacting the TCA). However, throughout the twentieth century the legislature created various statutory causes of action that partly waived sovereign immunity. For example, in 1941 N.M. Laws, ch. 192, § 2, the legislature partly waived sovereign immunity for injuries caused by the operation of motor vehicles. Liability in those instances was limited to the insurance purchased by the government entity sued. *Id.* In another example, the legislature enacted the Public Officers and Employees Liability Act, 1975 N.M. Laws, ch. 334, partially waiving immunity and limiting liability to the insurance coverage available under NMSA 1953, § 5–13–10 (Repealed 1976). This Court, commenting on the net effect of such statutes noted:

> [These statutes] represent legislative attempts to circumvent and avoid the harsh, unconscionable and unjust results stemming from court-created immunity, which already completely protects the state against suits from its negligent acts, by providing compensation for those injured by the state.... *Neither statute permits any situation to arise in which the state or its political subdivisions could suffer any real liability since any judgment has to be limited to the policy limits.*

*Galvan v. City of Albuquerque,* 87 N.M. 235, 237, 531 P.2d 1208, 1210 (1975) (emphasis added). *Galvan* demonstrates that when the legislature authorized suit against government entities before the existence of the TCA, liability commonly was limited. Thus, this Court perceives the TCA cap as a natural extension of a long-held practice and public policy of limiting damage awards against government entities.

{25} Finally, neither the New Mexico courts nor the legislature has ever concluded that the right of access to the courts creates with it a right to full recovery of damages against the state and its political subdivisions. The *Trujillo I* Court noted that the protection of one's lawful recovery of damages has "played a vital role in New Mexico since before the time of statehood." *Trujillo I,* 110 N.M. at 624, 798 P.2d at 574. The *Trujillo I* Court relied heavily on *Richardson* in asserting the primacy of this doctrine but never stated how this doctrine necessarily permits the type of recovery sought here against a government entity. We do not

believe that the Court's reliance on *Richardson*, a case that did not involve public entities, answers this inquiry. On the contrary, legislative history and case law strongly suggest that the right of access to the courts is not implicated by the TCA cap.

## B.

{26} Rational basis scrutiny is the appropriate equal protection analysis to be employed. The interests at stake in a challenge of the TCA cap are of an economic or financial nature, and this Court is unconvinced that the Plaintiffs' equal protection rights are affected so substantially that intermediate scrutiny is warranted. Under an analysis of either federal or state constitutional equal protection law, the TCA cap should be subject to rational basis review.

{27} Federal case law clearly employs rational basis scrutiny in analyzing equal protection claims where limits have been placed upon damage awards. The lead case on this topic is *Duke Power Co. v. Carolina Envtl. Study Group, Inc.,* 438 U.S. 59, 98 S.Ct. 2620, 57 L.Ed.2d 595 (1978). In that case, the United States Supreme Court explained why a rational basis analysis is the appropriate method for testing the constitutionality of a cap on damages:

The liability-limitation provision [is] a classic example of an economic regulation—a legislative effort to structure and accommodate "the burdens and benefits of economic life.... [T]he burden is on one complaining of a due process violation to establish that the legislature has acted in an arbitrary and irrational way." That the accommodation struck may have profound and far-reaching consequences ... provides all the more reason for this Court to defer to the congressional judgment unless it is demonstrably arbitrary or irrational.

*Id.* at 83–84, 98 S.Ct. 2620 (quoting *Usery v. Turner Elkhorn Mining Co.,* 428 U.S. 1, 15, 96 S.Ct. 2882, 49 L.Ed.2d 752 (1976)); *see also id.* at 93, 98 S.Ct. 2620 (noting that equal protection arguments track and duplicate due process arguments and often are not subjected to a separate analysis). Because the U.S. Supreme Court has spoken directly on this issue, we consider the matter conclusively resolved as a matter of federal constitutional law.

{28} Under the New Mexico Constitution, we find a similar result. At its core, the TCA cap is economic legislation. It attempts to regulate the burdens and benefits of economic life, and in doing so, is subject to rational basis scrutiny. *See Duke Power Co.,* 438 U.S. at 83, 98 S.Ct. 2620. Furthermore, case law from other jurisdictions strongly suggests that legislative classifications of this nature do not require heightened constitutional scrutiny.

It has been said that "[e]very line drawn by a legislature leaves some out that might well have been included. That exercise of discretion, however, is a legislative, not a judicial function." *Village of Belle Terre v. Boraas,* 416 U.S. 1, 8, 94 S.Ct. 1536, 1540, 39 L.Ed.2d 797 (1974). Absent invidious discrimination, however, the mere existence of a classification does not justify this court overturning the action of the elected legislature on equal protection grounds .... Because the statute does not abridge a fundamental constitutional right or adversely affect a suspect class, "the sole requirement is that the challenged classification rationally relates to a legitimate state interest." *Opinion of the Justices,* 117 N.H. 533, 537, 376 A.2d 118, 120 (1977); *see McGowan v. Maryland,* 366 U.S. 420, 426–28, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961).

*Cargill's Estate v. City of Rochester,* 119 N.H. 661, 406 A.2d 704, 707 (N.H.1979).

{29} The application of rational basis scrutiny to the damages cap challenge in this case comports not only with the analysis of the United States Supreme Court in *Duke Power Co.,* but also with the majority of our sister states. Most states employ some type of tort cap that limits the damages recoverable against the state or other political subdivisions. James L. Isham, Annotation, *Validity and Construction of Statute or Ordinance Limiting the Kinds or Amount of Actual Damages Recoverable in Tort Action Against Governmental Unit,* 43 A.L.R.4th 19, 24–25 (1986 & Supp.1996).

Where such caps have been challenged, most jurisdictions have employed a rational basis analysis for review of the subject claims. *See generally id.* (listing the jurisdictions that have considered cap challenges and noting the types of analyses employed). Although other courts' conclusions on the issue do not bind us, we find that the overwhelming weight of precedent suggests application of rational basis scrutiny to economic legislation of the type represented by the TCA cap.

{30} For these reasons, rational basis scrutiny will be the applicable constitutional analysis employed for evaluating equal protection challenges to the TCA cap. However, in adopting the rational basis test, we hasten to add that we are not adopting the test characterized as a "virtual rubber-stamp" by *Richardson,* 107 N.M. at 698, 763 P.2d at 1163 (quoting Laurence H. Tribe, *American Constitutional Law* § 16–32, at 1610 (2d. ed.1988)); as "toothless" by *Trujillo I,* 110 N.M. at 628, 798 P.2d at 578 and as "preordain[ing]" the result by applying no real scrutiny. *Alvarez v. Chavez,* 118 N.M. 732, 735, 886 P.2d 461, 464 (Ct.App.1994).

{31} The rational basis inquiry does not have to be largely toothless. *DeFoor,* 824 P.2d at 787 n. 4 (criticizing our characterization in *Trujillo I* ). The Colorado court cited two examples of cases in which it struck down either a legislative classification or a statute, both using the rational basis test. *See id.* In addition, the United States Supreme Court has at least twice in recent years used the rational basis test to strike down legislation. *See, e.g., Cleburne,* 473 U.S. at 441–47, 105 S.Ct. 3249; *Hooper v. Bernalillo County Assessor,* 472 U.S. 612, 616, 105 S.Ct. 2862, 86 L.Ed.2d 487 (1985).

{32} Thus, we do not deem it necessary to our role as "guardian of the constitution," *see Trujillo I,* 110 N.M. at 626, 798 P.2d at 576 (quoting *Samsel v. Wheeler Transp. Servs., Inc.,* 246 Kan. 336, 789 P.2d 541, 549 (Kan.1990)), to employ any standard other than rational basis scrutiny to social and economic legislation such as damage caps. In fact, we agree with the partial

concurrence and dissent in *Trujillo I,* 110 N.M. at 633, 798 P.2d at 583 (Montgomery, J., concurring in part and dissenting in part), that the damage cap at issue in *Richardson* would be held unconstitutional under the standard we adopt today. We also are confident that this modern articulation of the rational basis standard would have reached the same result that was achieved in Court of Appeals cases applying a fourth type of scrutiny defined as "heightened" rational basis analysis. *See Alvarez,* 118 N.M. 732, 738–39, 886 P.2d 461, 467–68 (Ct.App.1994); *Corn v. New Mexico Educators Fed. Credit Union,* 119 N.M. 199, 202–04, 889 P.2d 234, 237–39 (Ct.App.1994). We expressly overrule *Alvarez* and *Corn* to the extent that they adopt a fourth tier of review that has not been utilized in our own cases. However, the rational basis test that we articulate today subsumes that fourth tier and addresses the concerns that caused the Court of Appeals to adopt a fourth tier of review.

C.

{33} Through the principle of stare decisis, this Court's use of the intermediate scrutiny standard in *Trujillo I* generally would become binding in analyzing future constitutional challenges to the TCA cap. Stare decisis is the judicial obligation to follow precedent, and it lies at the very core of the judicial process of interpreting and announcing law. *See State ex rel. Callaway v. Axtell,* 74 N.M. 339, 343, 393 P.2d 451, 454 (1964); *Planned Parenthood v. Casey,* 505 U.S. 833, 854, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992). It promotes very important principles in the maintenance of a sound judicial system: 1) stability of the law, *see, e.g., State v. Jones,* 44 N.M. 623, 634, 107 P.2d 324, 331 (1940) (Bickley, C.J., concurring) (stating that the object of stare decisis is to promote "uniformity, certainty, and stability in the law"); Note, *Constitutional Stare Decisis,* 103 Harv. L.Rev. 1344, 1347 (1990); 2) fairness in assuring that like cases are treated similarly, *see, e.g., City of Las Vegas v. Oman,* 110 N.M. 425, 433, 796 P.2d 1121, 1129 (Ct.App.1990); and 3) judicial economy, *see, e.g., id.* (discussing how stare decisis discourages the relitigation of similar issues).

{34} However, the principle of stare decisis does not require that we always follow precedent and may never overrule it. Instead, the doctrine states that "in both common law and constitutional cases . . . 'any departure from [precedent] . . . demands special justification.'" Note, *supra* at 1346 (quoting *Arizona v. Rumsey,* 467 U.S. 203, 212, 104 S.Ct. 2305, 81 L.Ed.2d 164 (1984)). Particular questions must be considered before overturning precedent: 1) whether the precedent is so unworkable as to be intolerable; 2) whether parties justifiably relied on the precedent so that reversing it would create an undue hardship; 3) whether the principles of law have developed to such an extent as to leave the old rule "no more than a remnant of abandoned doctrine;" and 4) whether the facts have changed in the interval from the old rule to reconsideration so as to have "robbed the old rule" of justification. *Planned Parenthood,* 505 U.S. at 855, 112 S.Ct. 2791; *see also Patterson v. McLean Credit Union,* 491 U.S. 164, 173, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989) (noting that special circumstances to reverse precedent might include "subsequent changes or development in the law" or showing that the precedent has become a "detriment to coherence and consistency in the law").

{35} This Court always demonstrates the highest regard for stare decisis, but when one of the aforementioned circumstances convincingly demonstrates that a past decision is wrong, the Court has not hesitated to overrule even recent precedent. *See First Fin. Trust Co. v. Scott,* 122 N.M. 572, 576, 929 P.2d 263, 267 (1996). Furthermore, the application of stare decisis is less compelling in tort cases than in property and contract settings. *See Bogle Farms, Inc. v. Baca,* 122 N.M. 422, 430, 925 P.2d 1184, 1192 (1996); *Beavers v. Johnson Controls World Servs.,* 118 N.M. 391, 399, 881 P.2d 1376, 1384 (1994).

{36} This Court concludes, under an analysis of stare decisis principles, that the intermediate scrutiny analysis adopted in *Richardson* and *Trujillo I* should be overruled. Primarily, as evidenced by our analysis of *Richardson* and *Trujillo I* in the preceding section, this Court believes that intermediate scrutiny, as a matter of law, was incorrectly adopted for the analysis of the TCA damage cap. In that sense, this Court is compelled to depart from *Trujillo I* because we conclude that it constitutes a "detriment to coherence and consistency in the law." *See Patterson,* 491 U.S. at 173, 109 S.Ct. 2363.

{37} Furthermore, events after the *Trujillo I* and *Trujillo II* remands demonstrate that implementation of intermediate scrutiny in assessing challenges to the TCA cap is unduly burdensome so as to be intolerable. *See Planned Parenthood,* 505 U.S. at 855, 112 S.Ct. 2791. First, this case has been enormously time-consuming and financially burdensome, lasting several years, encompassing two lengthy district court evidentiary proceedings, and requiring numerous appeals to this Court. Continued application of the intermediate scrutiny standard would involve further protracted and expensive evidentiary trials whenever similar claims are brought. We conclude that such a process results in tremendous inefficiency of court time and resources as well as hardship on litigants.

{38} Second, during these proceedings, evidence issues posed substantial problems for the district courts. The parties disagreed several times about the parameters of admissible evidence, resulting in several interim appeals to this Court. The evidence eventually obtained was, at best, difficult to understand, and at worst, misleading. In particular, the trials focused on limited "windows" of experience with the TCA cap. The hearings exhaustively analyzed the effects of "cap-busting" cases within the windows but failed to address the trends and relevant information that might have occurred outside the periods considered. In the end, two very qualified district judges arrived at completely different results in the two evidentiary trials. Moreover, we harbor questions whether our prior orders appropriately directed the parties to the proper time frames. We limited the inquiry to the years 1976 and 1984–85, *see Trujillo II,* 119 N.M. at 603, 893 P.2d at 1007, whereas perhaps the time frame of inquiry should not have been limited in this fashion. In light of our holding, however, we need not resolve these questions.

{39} This Court concludes that such a fact-finding process does very little to clarify the types of issues presented in this appeal. Hence, continued adherence to this process could result in a skewed administration of the statute or in the "checkerboard" constitutionality determinations of which the now-withdrawn plurality opinion warned. *Trujillo v. City of Albuquerque,* NMSC 18,296 and 19,118, slip op., pages 17–18 (Sept. 6, 1994). In sum, we believe that, even considering stare decisis principles, both the substance of the law as well as the procedural realities in this case warrant reversal of *Trujillo I*'s adoption of intermediate scrutiny to test the TCA cap.

### III.

■ {40} Although we adopt rational basis as the standard for analysis of TCA cap claims, the Court upholds the district court's application of intermediate scrutiny and the damages awarded with regard to the parties before us. Law-of-the-case principles strongly encourage our application of intermediate scrutiny to the Plaintiffs' claims in this case. Generally, the law-of-the-case doctrine stands for the proposition that "the law applied on the first appeal of a case is binding in the second appeal" of that case. *Farmers' State Bank v. Clayton Nat'l Bank,* 31 N.M. 344, 353, 245 P. 543, 547 (1925). Law-of-the-case doctrine "is a matter of precedent and policy; it is a determination that, in the interests of the parties and judicial economy, once a particular issue in a case is settled it should remain settled." *See State v. Breit,* 1996–NMSC–67, ¶ 12, 122 N.M. 655, 930 P.2d 792.

■ {41} The application of the law-of-the-case doctrine, however, is discretionary and flexible; it will not be used to uphold a clearly incorrect decision:

> [S]ince the doctrine of the law of the case is merely one of practice or court policy, and not of inflexible law, so that appellate courts are not absolutely bound thereby, but may exercise a certain degree of discretion in applying it, there are many holdings in which the courts have retreated from any inflexible rule requiring the doctrine to be applied regardless of error in

the former decision, and it has been said that the doctrine should not be utilized to accomplish an obvious injustice, or applied where the former appellate decision was clearly, palpably, or manifestly erroneous or unjust.

*Reese v. State,* 106 N.M. 505, 506, 745 P.2d 1153, 1154 (1987) (quoting, 5 Am.Jur.2d *Appeal and Error* § 750 at 194 (1962)); *see also Killeen v. Community Hosp.,* 101 Misc.2d 367, 420 N.Y.S.2d 990, 992 (Sup.Ct.1979) (law-of-the-case is discretionary); *Greene v. Rothschild,* 68 Wash.2d 1, 414 P.2d 1013, 1013–14 (Wash.1966) (if application of the doctrine would work a manifest injustice to one party, the erroneous decision should be disregarded and set aside). Hence, the law-of-the-case doctrine generally would not be used to support application of *Trujillo I* because, as noted earlier in this Opinion, both the substance of the law and the resulting difficulties in applying the decision demonstrate that *Trujillo I* is clearly erroneous.

{42} However, law-of-the-case doctrine provides for discretionary application, and more so than stare decisis, considers the justness of applying a particular rule to the parties. *See Reese,* 106 N.M. at 506–07, 745 P.2d at 1154–55. In the interests of justice, this Court applies to the parties before us the intermediate scrutiny standard, with its structural and temporal limitations, adopted in *Trujillo I* and *Trujillo II.* The court proceedings in this case span several years and involve two remands for two very long evidentiary trials. Early within that context, this Court instructed the parties to structure their arguments and evidence presentations to answer whether the TCA cap was substantially related to an important government interest. The resulting complications associated with application of that test and a reanalysis of the relevant law demonstrates that use of this standard was error. This observation, however, does not alter the fact that the parties in this case justifiably relied on the *Trujillo I* adoption of intermediate scrutiny. We recognize the difficulties created by our reversal of that test, but we hold that it would not be in the interests of justice, after such substantial reliance, to apply the rational basis test to the parties before us.

For that reason, we hold that intermediate scrutiny should be the standard by which the immediate parties' claims are measured.

{43} In doing so, this Court upholds the district court's analysis under the particular and rather unique form of intermediate scrutiny adopted in *Trujillo I, Trujillo II*, and subsequent orders of this Court. Although the trial court's conclusion is subject to de novo review, we conclude that such an analysis would not alter the district court's finding. We agree that the Defendants failed to demonstrate the TCA cap bore a substantial relationship to an important government interest under the structural and temporal limitations established by our previous orders. Therefore, Plaintiffs are entitled to their full measure of damages obtained upon judgment.

## IV.

{44} Plaintiffs claim that they are entitled to post-judgment interest pursuant to NMSA 1978, § 41–4–19(B) (1991) and 56–8–4(D)(1993). Section 41–4–19(B) provides:

> No judgment against a governmental entity or public employee for any tort for which immunity has been waived under the Tort Claims Act shall include an award for exemplary or punitive damages or for interest prior to judgment.

Section 56–8–4(D) immunizes the state and its political subdivisions from post-judgment interest, "except as otherwise provided by statute or common law." Plaintiffs argue: (1) that these two statutes should be read *in pari materia* so that Plaintiffs may recover post-judgment interest, and (2) that prior Court of Appeals decisions have not read, construed or applied the two pertinent statutory provisions in this manner to reach a considered and coherent construction of the statutes.

{45} Statutory construction is a question of law which we review de novo. *See State v. Rowell*, 121 N.M. 111, 114, 908 P.2d 1379, 1382 (1995). "Where two statutes are related to the same general subject, the court will generally construe them *in pari materia* to give effect to each." *State v. Alvarado*, 1997–NMCA–027, ¶ 6, 123 N.M. 187, 936 P.2d 869.

{46} Applying the above principles to the issue before us, we hold that Plaintiffs may not recover post-judgment interest against Defendants under the TCA. As recognized by the Court of Appeals in *Folz v. State*, 115 N.M. 639, 643, 857 P.2d 39, 43 (Ct.App.1993), Section 41–4–19(B) does not explicitly prohibit the recovery of post-judgment interest. However, when this statute is read *in pari materia* with Section 56–8–4(D), post-judgment interest is prohibited on recoveries from the state and its political subdivisions. *See Yardman v. San Juan Downs, Inc.*, 120 N.M. 751, 762, 906 P.2d 742, 753 (Ct.App. 1995) (holding "an award of post-judgment interest on judgments against a governmental entity is not permitted under the Tort Claims Act"); *Fought v. State*, 107 N.M. 715, 716, 764 P.2d 142, 143 (Ct.App.1988) (same). The plaintiffs in *Folz* were entitled to collect post-judgment interest under Section 41–4–19(B) because they filed their claim prior to the effective date of Section 56–8–4(D), unlike the plaintiffs in *Fought* and *Yardman*.

{47} Section 56–8–4(D) contemplates that the state and its political subdivisions will not be immune from post-judgment interest where a statute or the common law explicitly provides. Section 41–4–19(B) does not so provide. The Section does not expressly state that the immunity provided to the state and its political subdivisions for post-judgment interest is waived under the TCA. *Cf. Kirby v. New Mexico State Highway Dep't.*, 97 N.M. 692, 699, 643 P.2d 256, 263 (Ct.App. 1982) (holding NMSA 1978, § 39–3–30 gives express authority, without exception, to recovery of costs against any losing party, including state and political subdivisions in claims brought under TCA). Further, as the Court recognized in *Fought*, at common law, judgments against any party, including the state, did not bear interest. *See Fought*, 107 N.M. at 716, 764 P.2d at 143. We thus conclude that Plaintiffs are not entitled to post-judgment interest.

## V.

{48} In conclusion, this Court adopts rational basis scrutiny as the equal protection analysis to be used in TCA cap challenges from this point forward. We expressly

**734**

overrule any case law to the extent that it conflicts with this holding. However, with regard to the parties and claims currently before us, principles of equity require application of intermediate scrutiny, as adopted in *Trujillo I* and *Trujillo II*. Under this form of intermediate scrutiny, this Court upholds the finding of the district court, invalidating the TCA cap and permitting recovery of the Plaintiffs' full damages, but disallowing Plaintiffs' claim for post-judgment interest.

{49}   **IT IS SO ORDERED.**

FRANCHINI, C.J., SERNA, J., THOMAS A. DONNELLY, Court of Appeals Judge, and LYNN PICKARD, Court of Appeals Judge, concur.

