The slip opinion is the first version of an opinion released by the Chief Clerk of the Supreme Court. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Chief Clerk for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

**IN THE SUPREME COURT OF THE STATE OF NEW MEXICO**

Opinion Number:

Filing Date: April 24, 2026

**NO. S-1-SC-40286**

**EL PASO ELECTRIC COMPANY,**

Appellant,

v.

**NEW MEXICO PUBLIC REGULATION COMMISSION,**

Appellee,

and

**CITY OF LAS CRUCES, NEW MEXICO DEPARTMENT OF JUSTICE, and DOÑA ANA COUNTY,**

Intervenors-Appellees.

**In the Matter of the Application of El Paso Electric Company for Revision of Its Retail Electric Rates Pursuant to Advice Notice No. 267, NMPRC Case No. 20-00104-UT**

**APPEAL FROM THE NEW MEXICO PUBLIC REGULATION COMMISSION**

El Paso Electric Company
Nancy B. Burns, Deputy General Counsel
Santa Fe, NM

Spencer Fane, LLP
Jeffrey J. Wechsler
Kari E. Olson
Joseph M. Dworak
Santa Fe, NM

for Appellant

Erin E. Lecocq, Appellate Specialist
Santa Fe, NM

for Appellee

City of Las Cruces
Bradley Douglas, City Attorney
Las Cruces, NM

Stevens Law LLC
Anastasia S. Stevens
Santa Fe, NM

for Intervenor-Appellee City of Las Cruces

Raúl Torrez, Attorney General
Santa Fe, NM
Aletheia V.P. Allen, Solicitor General
Lawrence M. Marcus, Assistant Solicitor General
Gideon Elliot, Utilities Bureau Chief
Albuquerque, NM

for Intervenor-Appellee New Mexico Department of Justice

Doña Ana County Attorney's Office
Nelson J. Goodin, General Counsel
Frederick D. Kennon, General Counsel
Las Cruces, NM

Stelzner, Winter, Warburton, Flores & Dawes, PA
Keith W. Herrmann
Nann M. Winter
Albuquerque, NM

for Intervenor-Appellee Doña Ana County

**OPINION**

**VARGAS, Chief Justice.**

{1}     In *Mountain States Telephone & Telegraph Co. v. New Mexico State Corp. Commission*, 1977-NMSC-032, ¶¶ 86-90, 90 N.M. 325, 563 P.2d 588, we explained that the New Mexico Public Regulation Commission's (Commission) ratemaking authority is "legislative in its nature," and thus the Commission is "limited generally to prospective regulation." We held that "rate fixing may not be accomplished retroactively, . . . [and p]ast deficits may not be made up by excessive charges in the future nor may past profits be reduced by disallowances to future operating expense." *Id.* ¶ 89 (internal quotation marks and citation omitted). For nearly fifty years, we have adhered to this rule against retroactive ratemaking. *See U.S. West Commc'ns, Inc. v. N.M. State Corp. Comm'n*, 1999-NMSC-016, ¶ 52, 127 N.M. 254, 980 P.2d 37 (explaining the "prohibition against retroactive ratemaking" as recognized in *Mountain States*).

{2}     Appellant, El Paso Electric Company (EPE), challenges this longstanding rule. EPE claims that the Commission unlawfully relied on the rule against retroactive ratemaking to deny recovery of certain losses EPE experienced under rates that EPE later successfully challenged on appeal. EPE argues that *Mountain States* does not apply to the circumstances and that recovery of these amounts would

not violate the prohibition on retroactive ratemaking. Alternatively, if we determine the Commission correctly applied the rule against retroactive ratemaking, then EPE asks this Court to disavow the rule and overrule *U.S. West* and *Mountain States*.

{3}     We thus consider: Does the rule against retroactive ratemaking prohibit the recovery of losses experienced by a utility under rates that are later vacated on appeal? And if so, should we abandon the rule against retroactive ratemaking? We agree with the Commission that the rule against retroactive ratemaking prohibited recovery of EPE's losses. We further decline EPE's request to overrule our retroactive ratemaking precedent. Key to our holding, we emphasize that a party that seeks to avoid incurring potentially unrecoverable losses during the pendency of an appeal should request a stay of the Commission's ratemaking order pursuant to NMSA 1978, Section 62-11-6 (1983), or request interim rates. Because EPE did not seek a stay or interim rate relief, we affirm the Commission's decision to deny EPE's recovery of the requested amounts.

## I.      BACKGROUND

{4}     This is EPE's second appeal from proceedings before the Commission addressing its 2020 Application for Revision of Retail Electric Rates (2020 Rate Case). Application for Revision of Retail Electric Rates, *In re El Paso Elec. Co.*, No.

20-00104-UT (N.M. Pub. Regul. Comm'n May 29, 2020) (Doc. 1188912).[1] In the first appeal, EPE challenged the June 23, 2021 final order issued by the Commission setting EPE's rates (June 2021 Order). Order Adopting Recommended Decision with Modifications, *In re El Paso Elec. Co.*, No. 20-00104-UT (N.M. Pub. Regul. Comm'n June 23, 2021) (Doc. 1203549). We reversed the June 2021 Order after determining that the Commission violated due process when excluding certain costs and assets from EPE's rate base. *El Paso Elec. Co. v. N.M. Pub. Regul. Comm'n*, S-1-SC-38874, dec. ¶¶ 1, 11, 15, 18 (N.M. May 1, 2023) (nonprecedential). We therefore vacated the June 2021 Order in its entirety. *Id.* ¶¶ 1, 24. We issued our mandate remanding the proceedings back to the Commission on June 7, 2023 (June 2023 Mandate).

{5} On remand, the Commission issued another order readopting its decisions in its June 2021 Order, except for those decisions that were inconsistent with our decision. *See El Paso Electric*, S-1-SC-38874, dec.; Order Upon Issuance of Mandate (Mandate Order), *In re El Paso Elec. Co.*, No. 20-00104-UT (N.M. Pub. Regul. Comm'n June 28, 2023) (Doc. 1222575). The Commission also directed EPE to propose amended rates that included the costs and assets that had been previously

---

[1]Commission pleadings can be viewed at https://e360.prc.nm.gov/portal/public/#/public/nm-prc/en/home (last visited Apr. 10, 2026).

excluded by the Commission. EPE proposed revised rates to begin January 1, 2024, which incorporated the previously-excluded costs and assets (January 2024 Rates). Response to Order Requiring El Paso Electric Company to Provide Calculations, *In re El Paso Elec. Co.*, No. 20-00104-UT (N.M. Pub. Regul. Comm'n Sep. 12, 2023) (Doc. 1224617). EPE also asked to create a regulatory asset for the amounts it had already incurred on these costs and assets, with recovery sought for amounts incurred between June 2021 and January 2024. El Paso Electric Company's Recommendation in Response to Order upon Issuance of Mandate, *In re El Paso Elec. Co.*, No. 20-00104-UT (N.M. Pub. Regul. Comm'n July 12, 2023) (Doc. 1223011). This proposed regulatory asset would be included in EPE's January 2024 Rates and thus would allow EPE to recover the losses it experienced under the June 2021 rates that were in effect during the first appeal. *El Paso Elec.*, S-1-SC-38874, dec.

{6}     Several parties objected to creation of the regulatory asset, arguing that EPE's recovery of these prior losses would constitute impermissible retroactive ratemaking. The Commission's Staff filed a brief in response partially agreeing with this objection. Staff's Response to El Paso Electric Company's Recommendation in Response to Order upon Issuance of Mandate (Staff's Response), *In re El Paso Elec. Co.*, No. 20-00104-UT (N.M. Pub. Regul. Comm'n July 26, 2023) (Doc. 1223349).

Relying on *Mountain States*, 1977-NMSC-032, ¶¶ 88-90, and *U.S. West*, 1999-NMSC-016, ¶¶ 52-54, the Commission's Staff suggested that the rule against retroactive ratemaking prohibited recovery of the amounts EPE incurred while the June 2021 Order was on appeal, but that the Commission could permit recovery of these amounts effective from the date of the Court's June 2023 Mandate. Staff's Response, No. 20-00104-UT, July 26, 2023, *supra*. The Commission's Staff thus recommended that the Commission approve EPE's proposed regulatory asset, but only for those amounts incurred between June 2023 and January 2024.

{7}     In its Final Order on Remand, the Commission approved EPE's January 2024 Rates. Final Order on Remand, *In re El Paso Elec. Co.*, No. 20-00104-UT (N.M. Pub. Regul. Comm'n Nov. 30, 2023) (Doc. 1226917). The Commission also authorized EPE to book a regulatory asset for the amounts incurred between June 2023 and January 2024. The Commission denied EPE's request to recover the amounts incurred between June 2021 and June 2023. The Commission agreed with its Staff "that allowing recovery of the pre-Mandate adjustments would constitute unlawful retroactive ratemaking."

{8}     EPE now appeals the Commission's Final Order on Remand, challenging only the Commission's decision to deny recovery of the losses incurred between June

2021 and June 2023. We have jurisdiction over this second appeal pursuant to NMSA 1978, Section 62-11-1 (1993).

## II. STANDARD OF REVIEW

{9}     As the party appealing the Commission's order, EPE bears the burden of showing "that the order appealed from is unreasonable, or unlawful." NMSA 1978, § 62-11-4 (1965). To meet this burden, EPE must show that "the Commission's decision is arbitrary and capricious, not supported by substantial evidence, outside the scope of the agency's authority, or otherwise inconsistent with law." *Pub. Serv. Co. of N.M. v. N.M. Pub. Regul. Comm'n*, 2019-NMSC-012, ¶ 12, 444 P.3d 460 (brackets, internal quotation marks, and citation omitted). We have no power to amend the Commission's order on appeal but must vacate the Commission's order in its entirety if we determine the order to be unreasonable or unlawful. NMSA 1978, § 62-11-5 (1982).

{10}     We refine this standard of review based on whether an issue presents a question of law, a question of fact, or a mixed question of law and fact. *Pub. Serv. Co.*, 2019-NMSC-012, ¶ 13; *Citizens for Fair Rates & the Env't v. N.M. Pub. Regul. Comm'n*, 2022-NMSC-010, ¶ 12, 503 P.3d 1138.

{11}     EPE here raises questions of law. When reviewing a question of law, we will accord some deference to the Commission's legal determinations, with the level of

deference accorded depending on the nature of the question involved. *N.M. Indus. Energy Consumers v. N.M. Pub. Regul. Comm'n*, 2007-NMSC-053, ¶ 19, 142 N.M. 533, 168 P.3d 105. We will accord higher deference to the Commission's interpretation of its governing statutes. *Morningstar Water Users Ass'n v. N.M. Pub. Util. Comm'n*, 1995-NMSC-062, ¶ 11, 120 N.M. 579, 904 P.2d 28. However, we recognize that "[i]t is the function of the courts to interpret the law, and we are therefore not bound by [the Commission's] interpretation [of law] and may substitute [our] own judgment for that of the [Commission]." *Doña Ana Mut. Domestic Water Consumers Ass'n v. N.M. Pub. Regul. Comm'n*, 2006-NMSC-032, ¶ 10, 140 N.M. 6, 139 P.3d 166 (internal quotation marks and citation omitted). "We will reverse the agency's interpretation of a law if it is unreasonable or unlawful." *N.M. Indus. Energy Consumers*, 2007-NMSC-053, ¶ 19.

## III.    DISCUSSION

{12}    We first consider whether the Commission lawfully applied the rule against retroactive ratemaking to deny EPE's request to include a regulatory asset in its January 2024 Rates for the amounts incurred between June 2021 and June 2023. We next consider EPE's request for this Court to recognize an equitable remedy to redress EPE's losses. Finally, we evaluate EPE's argument that we should abandon the rule against retroactive ratemaking and overrule our related precedent.

**A.    The Commission Lawfully Applied the Rule Against Retroactive Ratemaking**

**1.    *Mountain States* and the rule against retroactive ratemaking**

{13}    The rule against retroactive ratemaking is a basic and well-established canon of public utility regulation applied to limit the authority of the Commission in setting a public utility's rates. *Mountain States*, 1977-NMSC-032, ¶¶ 88-90; *see also* Stefan H. Krieger, *The Ghost of Regulation Past: Current Applications of the Rule Against Retroactive Ratemaking in Public Utility Proceedings*, 1991 U. Ill. L. Rev. 983, 984-87 (1991) (explaining that the rule against retroactive ratemaking was adopted as "a basic canon of public utility regulation" regarding public utility commissions' authority based on language in the commissions' enabling statutes). Essentially, the rule presumes that, absent express statutory or constitutional language to the contrary, the Commission has not been authorized to set rates retroactively so as to permit the refund or recovery of gains or losses experienced under prior rates. *Mountain States*, 1977-NMSC-032, ¶¶ 88-89; *see also N.M. Elec. Serv. Co. v. N.M. Pub. Serv. Comm'n*, 1970-NMSC-097, ¶¶ 3-6, 81 N.M. 683, 472 P.2d 648 (concluding that the Commission does not have authority to order a utility to refund ratepayers the savings the utility received after a reduction in wholesale rates). The rule against retroactive ratemaking serves policies of predictability and stability, and, along with the filed-rate doctrine, helps ensure that utilities and ratepayers receive

notice of the rates that will apply to a transaction. *See* 73B C.J.S. *Public Utilities* § 141 (2015) (explaining the rationale behind the rule against retroactive ratemaking and the related filed-rate doctrine); Scott Hempling, *Regulating Public Utility Performance: The Law of Market Structure, Pricing and Jurisdiction* 371 (2d ed. 2021) ("The rule against retroactivity ensures the predictability and stability of utility rates." (internal quotation marks and citation omitted)).

{14} We adopted the rule against retroactive ratemaking in *Mountain States*, 1977-NMSC-032. In that case, we addressed an appeal from a Commission order in which the Commission had both denied the utility's proposed amended rates and refused to fix rates for the utility, despite previously finding that the current rates were inadequate to meet the utility's revenue needs. *Id.* ¶¶ 2-5. The utility argued that the Commission "had a constitutional duty to fix the rates" once the Commission determined that the utility was "suffering a revenue deficiency and determined a rate of return to which [the utility] was entitled." *Id.* ¶¶ 6, 10. We agreed and held that the Commission must fix just and reasonable rates for a utility if provided with substantial evidence on which to do so. *Id.* ¶¶ 24, 33. We explained that the Commission should set interim rates to "minimize the confiscation of [a utility's] property" once it becomes clear that current rates are confiscatory. *Id.* ¶¶ 41, 50-51. We further held "that it was error under the[] circumstances for the Commission,

having refused to accept the rates filed by the [utility], to decline to fix rates which would be just and reasonable." *Id.* ¶ 75.

{15}     We next considered the proper remedy for the Commission's unlawful refusal to approve amended rates. We had previously ordered that the rates proposed by the utility would go into effect as interim rates during the appeal. *Id.* ¶¶ 86, 93; *U.S. West*, 1999-NMSC-016, ¶ 52 (explaining that the *Mountain States* Court vacated the Commission's order and "determin[ed] that interim rate relief was warranted"). The utility asked that we order the Commission to make these interim rates retroactive to "the date on which [the utility] claims that it was mandatory for the Commission to fix rates." *Mountain States*, 1977-NMSC-032, ¶¶ 86-87. We thus considered whether the Commission could backdate the effective date of the interim rates so as to permit recovery of the losses the utility experienced under the Commission's vacated order. *Mountain States*, 1977-NMSC-032, ¶¶ 86-87.

{16}     We held that the Commission could not set retroactive rates. *Id.* ¶¶ 88-90. We reasoned: "[R]ate-making is legislative in its nature, and it is axiomatic that legislative action operates prospectively, not retroactively. Retroactive remedies, which are in the nature of reparations rather than rate-making, are peculiarly judicial in character, and as such are beyond the authority of the Commission to grant." *Id.* ¶ 88 (citation omitted). We further explained:

> [T]here is no better established rule with regard to the prescription of rates for a public utility than the one that holds that rate fixing may not be accomplished retroactively, unless some specific statutory or constitutional authority permits. Past deficits may not be made up by excessive charges in the future nor may past profits be reduced by disallowances to future operating expense.

*Id.* ¶ 89 (internal quotation marks and citation omitted). Because "neither the applicable constitutional provisions nor the pertinent statutes . . . provide the requisite specific permission to make rates retroactive," we concluded that "the rates fixed by the Commission will apply prospectively only." *Id.* ¶ 90.

{17}   Later, in *U.S. West*, we considered whether the *Mountain States* Court's prohibition on retroactive ratemaking prevented the Commission from backdating the effective date of rates when a ratemaking order is affirmed on appeal. *U.S. West*, 1999-NMSC-016, ¶¶ 51-52. We explained:

> [T]his Court has recognized a prohibition against retroactive ratemaking in *Mountain States 1977*. After vacating an order of the Commission and determining that interim rate relief was warranted in that case, we addressed the question of whether the effective date of such relief could predate the Court's order. We concluded that it could not. New Mexico is not alone in reaching this conclusion, and, in fact, it appears that courts are evenly divided on the issue.
>
> The rationale behind our application of the rule against retroactive ratemaking in the context of *Mountain States 1977* was that ratemaking is legislative in its nature, and it is axiomatic that legislative action operates prospectively, not retroactively. It follows that only commissions, not the courts, can engage in ratemaking[, and] . . . only the Commission, and not this Court, can change rates after this Court

vacates a prior order of the Commission and remands the matter for further proceedings.

*Id.* ¶¶ 52-53 (footnote omitted) (internal quotation marks and citations omitted). We held, however, that the rule on retroactive ratemaking does not prohibit rates from taking effect on the original date of a ratemaking order when that order is affirmed on appeal. *Id.* ¶ 54. This is because, when this Court affirms a ratemaking order, "it is not necessary for the Commission to engage in additional ratemaking [on remand] because the Court's action merely serves to enforce the rates set in the order it affirms." *Id.*

**2.      The rule against retroactive ratemaking applies to EPE's prior losses**

{18}      EPE claims that the Commission misapplied the rule against retroactive ratemaking when denying its request to book a regulatory asset for the amounts it incurred between June 2021 and June 2023. EPE argues that the circumstances presented are distinguishable from *Mountain States* and *U.S. West*. As EPE points out, in *Mountain States*, the Commission had refused to fix rates for the utility. 1977-NMSC-032, ¶¶ 4, 33. But in the present matter, the Commission fixed rates that were later held to be unlawful and unreasonable because the Commission violated EPE's due process rights. *El Paso Elec.*, S-1-SC-38874, dec. ¶¶ 1, 24. EPE distinguishes *U.S. West* by noting that there, the Commission had entered a ratemaking order that was affirmed on appeal. 1999-NMSC-016, ¶¶ 3, 10, 51. In contrast here, the June

2021 Order was vacated in the first appeal. *El Paso Elec.*, S-1-SC-38874, dec. ¶¶ 1, 24.

{19}    These distinctions do not sufficiently distinguish this matter from our retroactive ratemaking precedent. In *Mountain States*, we held that the Commission acted unlawfully when denying the utility's proposed rates and vacated the Commission's order. 1977-NMSC-032, ¶¶ 50, 75. Similarly, in the first appeal at issue here, we concluded that the Commission acted unlawfully when denying EPE's proposed rates and vacated the June 2021 Order. *El Paso Elec.*, S-1-SC-38874, dec. ¶¶ 1, 11, 15, 18, 23. And like the utility in *Mountain States*, EPE here seeks to recover the losses experienced under the Commission's unlawful and vacated order. 1977-NMSC-032, ¶ 86; *see also U.S. West*, 1999-NMSC-016, ¶ 52 ("After vacating an order of the Commission[, *Mountain States*] . . . addressed the question of whether the effective date of such relief could predate the Court's order. We concluded that it could not." (citation omitted)). In *Mountain States*, the utility tried to recover its losses by backdating the effective date of its interim rates. 1977-NMSC-032, ¶ 86. Here, EPE sought to recover its losses by including a regulatory asset in its new rates. Both of these mechanisms have the same practical effect: the setting of rates that include recovery for *past deficits*. *Id.* ¶ 89. *Mountain States* therefore controls the issues presented in this case.

{20} This conclusion is consistent with the rationale underlying the rule against retroactive ratemaking. We adopted the rule in *Mountain States* because the Commission's ratemaking authority is "legislative in its nature." *Id.* ¶ 88. The rule against retroactive ratemaking is therefore an extension of the presumption against retroactive legislation. *Cf. Howell v. Heim*, 1994-NMSC-103, ¶ 17, 118 N.M. 500, 882 P.2d 541 (discussing the presumption that laws will "apply prospectively absent a clear intention to the contrary"); NMSA 1978, § 12-2A-8 (1997) ("A statute or rule operates prospectively only unless the statute or rule expressly provides otherwise or its context requires that it operate retrospectively."). We have defined retroactive legislation as a "law [which] affects acts, transactions, or occurrences that happened before the law came into effect." *Coleman v. United Eng'rs & Constructors, Inc.*, 1994-NMSC-074, ¶ 12, 118 N.M. 47, 878 P.2d 996; *see also City of Albuquerque v. State ex rel. Vill. of Los Ranchos de Albuquerque*, 1991-NMCA-015, ¶ 33, 111 N.M. 608, 808 P.2d 58 (defining a *retroactive law* as "one which is made to affect acts or transactions occurring before it came into effect, . . . and which imparts to them characteristics, or ascribes to them effects, which were not inherent in their nature in the contemplation of the law as it stood at the time of their occurrence" (internal quotation marks and citations omitted)).

{21} The amounts EPE seeks to recover here clearly fall within this definition of retroactivity. These amounts were excluded from the rates applicable between the Commission's June 2021 Order and the Court's June 2023 Mandate. These amounts therefore arise from transactions occurring before EPE's January 2024 Rates. If the Commission were to allow EPE to recover these amounts in rates with a January 2024 effective date, then the Commission would retroactively change the price of transactions occurring between June 2021 and June 2023. This is precisely what the rule against retroactive ratemaking was designed to prevent.

{22} EPE nevertheless argues that its recovery of the amounts excluded by the June 2021 Order would not affect prior transactions because rates set by the Commission are not final until those rates are affirmed on appeal. EPE asserts that it does not seek to recover "past losses" within the meaning of the retroactive ratemaking rule, but that it instead merely seeks to recoup "under-collections" from rates that were not lawfully established. EPE relies on nonbinding authority from other states to support its position, but we have binding authority addressing this proposition. In *U.S. West*, we acknowledged a split of authority on whether a utility may recover losses experienced under a ratemaking order that is later vacated on appeal. 1999-NMSC-016, ¶ 52; *see also* Krieger, *supra*, at 1022 ("As to the first issue—whether a prevailing appellant can obtain retroactive relief for the period between the

commission order and the initial reversal either in the form of a surcharge for a utility or a refund for a ratepayer—the cases are almost evenly split."). And, despite noting that "courts are evenly divided" on this issue, we concluded that *Mountain States* remains good law. *U.S. West*, 1999-NMSC-016, ¶¶ 52-53.

{23} EPE has not persuaded us to reconsider that conclusion now. *Mountain States* adopted the rule against retroactive ratemaking, in part, because the "pertinent statutes" do not authorize the Commission to fix rates to recover past gains or losses. 1977-NMSC-032, ¶ 90. And we concur that New Mexico's Public Utility Act (PUA), NMSA 1978, §§ 62-1-1 to 62-6-27 and 62-8-1 to 62-13-16 (1887, as amended through 2025), does not authorize the Commission to set retroactive rates. Rather, a rate that has been approved pursuant to the PUA will go into effect notwithstanding the existence of an appeal, § 62-11-6, and will be the only rate that the utility may lawfully charge ratepayers until that rate is amended pursuant to Section 62-8-7 or the ratemaking order is vacated by this Court pursuant to Section 62-11-5.

{24} When construing the PUA, we will adhere to the plain language of the enactment as the primary source of its meaning. *Coal. for Clean Affordable Energy v. N.M. Pub. Regul. Comm'n*, 2024-NMSC-016, ¶ 24, 549 P.3d 500. We will only depart from the statutory language if its meaning is ambiguous or if applying "'the

literal use of the words would lead to injustice, absurdity or contradiction, in which case the statute is to be construed according to its obvious spirit or reason.'" *Id.* (quoting *State v. Davis*, 2003-NMSC-022, ¶ 6, 134 N.M. 172, 74 P.3d 1064). Further, "We interpret statutory language in the context of the statute as a whole and in a way that facilitates the achievement of legislative purpose." *Socorro Elec. Coop., Inc. v. N.M. Pub. Regul. Comm'n*, 2024-NMSC-017, ¶ 28, 557 P.3d 68.

{25} Section 62-8-7(D) of the PUA provides that, when the Commission sets a rate, "Those rates shall thereafter be observed until changed, as provided by the [PUA]." Section 62-11-6 provides, "The pendency of an appeal shall not of itself stay or suspend the operation of the order of the commission." These two provisions codify the filed-rate doctrine, another mainstay of public utility law that serves as a corollary to the rule against retroactive ratemaking. *See* 73B C.J.S. *Public Utilities* § 141 (discussing the filed-rate doctrine in relation to the rule against retroactive ratemaking); Krieger, *supra*, at 986 n.8 (describing the filed-rate doctrine as "[c]losely related to, but distinct from, the rule against retroactive ratemaking," as the filed-rate doctrine is "a limitation on the power of utilities, not commissions"). The filed-rate doctrine presumes "any filed rate—that is, one approved by the governing regulatory agency—to be per se reasonable" and "the only legal rate" to be charged to ratepayers. *Valdez v. State*, 2002-NMSC-028, ¶ 5, 132 N.M. 667, 54

P.3d 71 (emphasis, brackets, internal quotation marks, and citations omitted); *accord U.S. West*, 1999-NMSC-016, ¶ 57 ("The filed-rate doctrine provides that the rate of the carrier duly filed is the only lawful charge and the carrier must abide by it." (brackets, ellipsis, internal quotation marks, and citation omitted)). The filed-rate doctrine preserves the Commission's jurisdiction to determine the reasonableness of rates, encourages predictability by notifying ratepayers of the rates applying to a transaction, and discourages utilities from discriminating between ratepayers. *U.S. West*, 1999-NMSC-016, ¶ 57; *Valdez*, 2002-NMSC-028, ¶ 5; 73B C.J.S. *Public Utilities* § 141; *cf.* § 62-8-6 (addressing nondiscrimination in rates).

{26}     Under Sections 62-8-7(D) and 62-11-6, a rate approved by the Commission goes into effect irrespective of any appeal and is the only rate that the utility may charge ratepayers. If this Court vacates the Commission's ratemaking order, then that order and its associated rates are nullified and the "rate case is [placed] in the same posture it was in before the original decision was rendered." *Pub. Serv. Co. v. N.M. Pub. Serv. Comm'n*, 1979-NMSC-042, ¶ 24, 92 N.M. 721, 594 P.2d 1177; *see also Vacate*, *Black's Law Dictionary* (12th ed. 2024) (defining *vacate* as "[t]o nullify or cancel; make void; invalidate"). The Commission may take further action on remand in accordance with the procedures set forth in the PUA, including approving or denying the utility's underlying rate application. Section 62-8-7(D); *Pub. Serv.*

*Co.*, 1979-NMSC-042, ¶ 24. The PUA thus contemplates that the Commission will take prospective action after a ratemaking order is vacated on appeal, that is, set new rates. Section 62-8-7; *Pub. Serv. Co.*, 1979-NMSC-042, ¶ 24.

{27}	We therefore disagree with EPE that its request for a regulatory asset did not seek prior losses because rates are not final until after appeal. Under the PUA, public utility rates are effective when approved by the Commission, notwithstanding the existence of any appeal. Section 62-8-7(D); § 62-11-6.

{28}	However, this does not mean that a party has no recourse pending an appeal of Commission-approved rates. The PUA expressly provides,

> The pendency of an appeal shall not of itself stay or suspend the operation of the order of the commission, but, during the pendency of such proceedings, the supreme court in its discretion may stay or suspend, in whole or in part, the operation of the commission's order on such terms as it deems just and in accordance with the practice of courts exercising equity jurisdiction.

Section 62-11-6; *see also City of Las Cruces v. N.M. Pub. Regul. Comm'n*, 2020-NMSC-016, ¶ 26, 476 P.3d 880 (requiring a party to seek a stay from the Commission before applying to this Court for a stay). Thus, a party may request a stay of a ratemaking order and associated rates as a means to avoid incurring losses that may otherwise become unrecoverable due to the rule against retroactive ratemaking. Section 62-11-6. If granted a stay, the PUA additionally provides that the Court may require the party seeking the stay "to secure the other parties against

loss due to the delay in the enforcement of the order, in case the order on appeal is affirmed." *Id.*

{29} Similarly, instead of approving final rates, the Commission may approve interim or provisional rates that are expressly made subject to refund or surcharge pending outcome of an appeal, thereby retaining the authority to reconcile gains or losses that would otherwise become unrecoverable due to the prohibition on retroactive ratemaking. *U.S. West*, 1999-NMSC-016, ¶ 27. We have previously recognized the Commission's authority to set interim rates as a means to prevent parties from incurring losses during the pendency of ratemaking proceedings. In *Mountain States*, we recognized the Commission's implied authority to approve interim rates to prevent the confiscation of a utility's property and even ordered that the utility's proposed rates be made effective as interim rates during the appeal. 1977-NMSC-032, ¶¶ 46, 50-52, 86, 93. And in *U.S. West*, we affirmed a Commission order setting an interim reduction in rates which was made subject to refund or surcharge within a specified period. 1999-NMSC-016, ¶¶ 11, 27. We explained that this interim rate procedure was not prohibited by the rule against retroactive ratemaking. *See id.* ¶ 27 (explaining that an interim rate "includes the possibility of imposing a surcharge to recoup unjustified past losses" (citing *Friends of the Earth v. Pub. Serv. Comm'n*, 254 N.W.2d 299, 309 (Wis. 1977))); *see also*

*Friends of the Earth*, 254 N.W.2d at 309 ("By conditioning the interim order on the possibility that a refund may be required, the [commission] may be deemed to have retained with the consent of the utility the power to issue an order relating back to the interim order for purposes of such re-evaluation." (footnote omitted)). Further, by designating rates as interim, the Commission gives notice that rates are provisional and may be subject to future adjustment to surcharge or refund. *See* Hempling, *supra*, at 374-75, 381-82 (explaining that regulatory notice that rates are subject to refund makes the filed-rate doctrine inapplicable and "changes what would be purely retroactive ratemaking into a functionally prospective process by placing the relevant audience on notice at the outset that the rates being promulgated are provisional only and subject to later revision" (internal quotation marks and citation omitted)).

**3.** **The Commission lawfully denied recovery of EPE's prior losses**

{30}    In the present matter, however, it does not appear that EPE sought either a stay or interim rate relief during its appeal of the June 2021 Order. Therefore, in accordance with Sections 62-11-6 and 62-8-7(D), the rates set by the Commission's June 2021 Order became effective until that order was vacated by this Court in June 2023. Once that order was vacated, the rates approved in the order were nullified and the 2020 Rate Case was placed in "the same posture it was in before" the order.

*Pub. Serv. Co.*, 1979-NMSC-042, ¶ 24. Soon after we remanded the proceeding, the Commission readopted the decisions it had made in its prior order, but modified those decisions to conform to this Court's directives. *El Paso Electric*, S-1-SC-38874, dec.; Mandate Order, No. 20-00104-UT, June 28, 2023, *supra*; *see Hobbs Gas Co. v. N.M. Pub. Serv. Comm'n*, 1993-NMSC-032, ¶ 6, 115 N.M. 678, 858 P.2d 54 ("Following remand to the Commission, the Commission may properly enter an order embodying those provisions in the earlier, vacated order that have been declared reasonable and lawful."). The Commission subsequently approved EPE's January 2024 Rates. Consistent with *Mountain States*, the Commission decided that EPE's January 2024 Rates could not include retroactive recovery for the losses EPE experienced under the rates set by the vacated June 2021 Order. 1977-NMSC-032, ¶ 90.

{31}   We agree with the Commission that the rule against retroactive ratemaking prohibits EPE's request to book a regulatory asset in its January 2024 Rates for the losses incurred between June 2021 and June 2023. *Id.* ¶ 90; § 62-8-7(D); § 62-11-6. EPE has not met its burden to show that the Commission's Final Order on Remand is unlawful or unreasonable. *See* § 62-11-4 ("The burden shall be on the party appealing to show that the order appealed from is unreasonable, or unlawful.").

Accordingly, we affirm the Commission's order denying EPE's request to recover these amounts.

**B.    EPE Has Not Shown a Basis for Independent Equitable Relief**

{32}    Although EPE acknowledges that the Commission may lack authority to permit retroactive recovery of its losses, EPE alternatively asks that we recognize this Court's power to equitably remedy the losses a utility may experience pending an appeal. We decline to do so. The PUA contemplates this Court granting equitable relief only in the form of a stay. Section 62-11-6. And, by statute, we are limited to either affirming or vacating and annulling a Commission order. Section 62-11-5. Further, we are "not a ratemaking body, and do not have the power or authority to determine what a fair rate of return shall be." *Gen. Tel. Co. of the Sw. v. Corp. Comm'n*, 1982-NMSC-106, ¶ 20, 98 N.M. 749, 652 P.2d 1200. "If only the Commission, and not this Court, has the power to engage in ratemaking, it follows that only the Commission, and not this Court, can change rates after this Court vacates a prior order of the Commission and remands the matter for further proceedings." *U.S. West*, 1999-NMSC-016, ¶ 53. EPE has not shown that this Court can independently provide the relief it seeks.

**C.     We Decline to Overrule Our Retroactive Ratemaking Precedent**

{33}     Because we hold that the Commission lawfully denied recovery of EPE's prior losses, we next consider EPE's claim that this Court should abandon the rule against retroactive ratemaking and overrule *Mountain States*, 1977-NMSC-032, and *U.S. West*, 1999-NMSC-016. "The principle of stare decisis dictates adherence to precedent," and we will "require a compelling reason to overrule one of our prior cases." *Padilla v. State Farm Mut. Auto. Ins. Co.*, 2003-NMSC-011, ¶ 7, 133 N.M. 661, 68 P.3d 901. We have adopted the following factors that "must be considered before overturning precedent":

> 1) whether the precedent is so unworkable as to be intolerable; 2) whether parties justifiably relied on the precedent so that reversing it would create an undue hardship; 3) whether the principles of law have developed to such an extent as to leave the old rule no more than a remnant of an abandoned doctrine; and 4) whether the facts have changed in the interval from the old rule to reconsideration so as to have robbed the old rule of justification.

*Trujillo v. City of Albuquerque*, 1998-NMSC-031, ¶ 34, 125 N.M. 721, 965 P.2d 305 (internal quotation marks and citation omitted). "This Court always demonstrates the highest regard for stare decisis, but when one of the aforementioned circumstances convincingly demonstrates that a past decision is wrong, the Court has not hesitated to overrule even recent precedent." *Id.* ¶ 35.

{34} On review of these four stare decisis factors, we conclude that EPE's disagreements with the fairness and logic of *Mountain States* do not meet our high standard for overruling precedent. We therefore decline to overrule *U.S. West* and *Mountain States*. *Cf. State v. Chavez*, 2021-NMSC-017, ¶¶ 53-54, 485 P.3d 1279 (noting that a party's arguments that a precedent "was wrongly decided . . . do not compel us to abandon [the] precedent, and we decline to do so").

**1.     The rule is not unworkable because the PUA provides for a stay or interim rates while Commission rates are being challenged on appeal**

{35} As to the first factor for overruling precedent, we determine that the rule against retroactive ratemaking is not "so unworkable as to be intolerable." *Trujillo*, 1998-NMSC-031, ¶ 34. EPE posits two "admittedly extreme" hypothetical scenarios to show the unfairness of the rule against retroactive ratemaking. In the first hypothetical, EPE describes a situation involving a discriminatory rate in which the utility over-collects a significant amount from ratepayers; in the second, EPE describes a situation in which the Commission arbitrarily denies a utility a needed rate increase, leading to the utility's bankruptcy. EPE suggests that the ratepayers and utility would have "no recourse" to avoid harsh application of the rule in these hypothetical situations.

{36} We disagree. EPE does not account for the possibility of a stay or interim rates in either of its hypothetical situations. Although the PUA generally prohibits the

Commission from setting retroactive rates, a party may seek a stay of the ratemaking order, § 62-11-6, or may request the Commission to approve provisional rates pending the outcome of the appeal, *U.S. West*, 1999-NMSC-016, ¶ 27. These two mechanisms provide a party to an appeal with a form of prospective relief, allowing the party to avoid incurring losses that might otherwise become unrecoverable due to the prohibition against retroactive ratemaking. In fact, *Mountain States* emphasized "the imperative duty of the [C]ommission to provide adequately for temporary rates" to minimize confiscation of a utility's property. 1977-NMSC-032, ¶ 50. And in *U.S. West*, we noted the availability of interim rate relief when the Commission finds "a pattern of overearning" by a utility, and even acknowledged a potential exception to the rule against retroactive ratemaking for situations involving extraordinary gains or losses. 1999-NMSC-016, ¶ 31 (citing Krieger, *supra*, at 1005-07).

{37} EPE nevertheless argues that a stay does not ensure meaningful relief because the procedure is "inefficient and place[s] a significant burden on this Court." But the standard for overruling precedent requires that a rule be "so unworkable as to be intolerable." *Trujillo*, 1998-NMSC-031, ¶ 34. While we recognize that there is some burden involved in obtaining a stay or interim rate relief, we do not view this burden

as being so unworkable as to be intolerable. EPE therefore has not met the first factor for overruling our retroactive ratemaking precedent.

**2.    Reversing the rule against retroactive ratemaking would create undue hardship because the rule protects parties' due process rights**

{38}    As to the second factor for overruling precedent, we conclude that reversing the rule against retroactive ratemaking would create undue hardship on parties who have justifiably relied on the rule. *Trujillo*, 1998-NMSC-031, ¶ 34 (noting that the second factor considers "whether parties justifiably relied on the precedent so that reversing it would create an undue hardship"). As recognized by *Mountain States*, ratemaking is inherently a legislative act. 1977-NMSC-032, ¶¶ 88, 90. We typically presume laws operate prospectively because retroactive laws may impair constitutional rights. *See, e.g.*, *State v. Ordunez*, 2012-NMSC-024, ¶¶ 13-14, 283 P.3d 282 (employing a presumption of nonretroactivity to avoid an ex post facto clause violation); *Swink v. Fingado*, 1993-NMSC-013, ¶ 29, 115 N.M. 275, 850 P.2d 978 (recognizing that a constitutional concern may arise if a retroactive law affects vested rights). A presumption of nonretroactivity also "gives effect to enduring notions of what is fair, and thus accords with what legislators almost always intend." *Kaiser Aluminum & Chem. Corp. v. Bonjorno*, 494 U.S. 827, 855-56 (1990) (Scalia, J., concurring); *see also Landgraf v. USI Film Prods.*, 511 U.S. 244, 265 (1994) ("Elementary considerations of fairness dictate that individuals should have an

opportunity to know what the law is and to conform their conduct accordingly; settled expectations should not be lightly disrupted.").

{39} Like other presumptions against nonretroactivity, the rule against retroactive ratemaking promotes principles of fairness and protects parties' due process rights by ensuring that rates paid for past transactions cannot be changed without prior notice to the parties. *Cf. Hobbs Gas Co.*, 1993-NMSC-032, ¶¶ 14, 22 (holding that the Commission may not retroactively change ratemaking methodologies and impose a refund requirement without prior notice); Krieger, *supra*, at 1046 ("In regard to retroactive relief for the period of the rate proceeding, the proposed analysis indicates that the crucial issue is notice."). For example, in *Hobbs*, we explained that the Commission must give the parties notice before changing its past ratemaking practices. 1993-NMSC-032, ¶ 12. We articulated a list of five factors to be considered when determining whether the Commission can make such a retroactive change. *Id.* ¶ 14. Applying these factors, we determined that the Commission could not change its past ratemaking practices under the circumstances of the case. *Id.* ¶¶ 15-22.

{40} We note similarities between the retroactivity concerns raised in *Hobbs* and the concerns embodied in the prohibition against retroactive ratemaking. The rule against retroactive ratemaking prohibits the Commission from retroactively

changing rates unless constitutionally and statutorily authorized to do so. *Mountain States*, 1977-NMSC-032, ¶ 89. Our precedent recognizes, however, that the rule against retroactive ratemaking does not bar the Commission from adopting interim rates that that are expressly made subject to modification through surcharge or refund. *U.S. West*, 1999-NMSC-016, ¶ 27. This interim rate procedure, working in tandem with the rule against retroactive ratemaking, ensures that parties receive prior notice of any potential adjustments to rates. *Id.* Thus, we safeguard principles of due process by adhering to the rule against retroactive ratemaking as applied by *U.S. West* and *Mountain States*. Overruling this precedent would create undue hardship to parties who have justifiably relied on the rule against retroactive ratemaking. EPE has not met the second factor for overruling precedent.

**3. The Court has not abandoned the rule, but has affirmed refunds and surcharges when authorized**

{41} In regards to the third stare decisis factor, the rule against retroactive ratemaking is not "a remnant of an abandoned doctrine" such that it is necessary to abandon the rule. *Trujillo*, 1998-NMSC-031, ¶ 34 (internal quotation marks and citation omitted). EPE argues that our opinion in *Qwest Corp. v. N.M. Pub. Regul. Comm'n*, 2006-NMSC-042, ¶¶ 22-29, 140 N.M. 440, 143 P.3d 478, represents an abandonment of the rule against retroactive ratemaking. In *Qwest Corp.*, this Court affirmed a Commission order imposing a retroactive refund requirement on a utility.

*Id.* ¶¶ 28-29. EPE suggests this holding is at odds with our other retroactive ratemaking precedent. But we conclude that *Qwest Corp.* is consistent with *Mountain States*.

{42} While the rule against retroactive ratemaking holds that typically the Commission must set prospective rates, the rule also recognizes that the Commission may act retroactively if statutorily and constitutionally authorized to do so. *See Mountain States*, 1977-NMSC-032, ¶ 89 (recognizing that rates are to be set prospectively "unless some specific statutory or constitutional authority permits" (internal quotation marks and citation omitted)); *cf. Swink*, 1993-NMSC-013, ¶ 29 (recognizing that the Legislature may act retroactively in certain circumstances, and stating that if a statute "expressly stated that it was to operate retroactively, we presumably would abide by that statement (absent some constitutional objection)"). In *Qwest Corp.*, the Commission was statutorily authorized to adopt an "alternative form of regulation" plan for a utility allowing for a refund of rates. 2006-NMSC-042, ¶¶ 4, 22-27. The parties also had prior notice of the possible refund requirement. *Id.* ¶ 29. Applying the due process factors articulated in *Hobbs*, 1993-NMSC-032, ¶ 14, we thus concluded that the refund requirement was not impermissible retroactive ratemaking under the circumstances of the case. *Qwest Corp.*, 2006-NMSC-042, ¶¶ 28-30. *Qwest Corp.* thus merely illustrates the pragmatic and continuing application

of the general rule that the Commission cannot change rates retroactively unless statutorily and constitutionally authorized. *Mountain States*, 1977-NMSC-032, ¶ 89. We have not abandoned the rule against retroactive ratemaking. EPE therefore has not met the third factor for overruling precedent.

**4.     EPE has not shown a sufficient change in facts to merit reversing our retroactive ratemaking precedent**

{43}     Finally, with respect to the fourth factor for overruling precedent, EPE asserts that this matter presents "unique facts." But EPE does not identify which "facts have changed . . . so as to have robbed the old rule of justification." *Trujillo*, 1998-NMSC-031, ¶ 34 (internal quotation marks and citation omitted). On review of the record, we are likewise unable to identify any facts that rob the rule against retroactive ratemaking of its original justification. As previously discussed, this matter is similar to *Mountain States*.

{44}     In sum, EPE has not shown compelling reasons for abandoning the rule against retroactive ratemaking or for reversing *U.S. West* and *Mountain States*. We therefore decline to overrule our longstanding precedent.

**IV.     CONCLUSION**

{45}     The Commission correctly applied the rule against retroactive ratemaking to deny EPE's proposed regulatory asset for the losses experienced between June 2021 and June 2023 in its January 2024 Rates. EPE has not shown sufficiently compelling

reasons for overruling this Court's retroactive ratemaking precedent. We therefore affirm the Commission's order and return these proceedings to the Commission.

{46} **IT IS SO ORDERED.**

_____
**JULIE J. VARGAS, Chief Justice**

**WE CONCUR:**

_____
**MICHAEL E. VIGIL, Justice**

_____
**C. SHANNON BACON, Justice**

_____
**DAVID K. THOMSON, Justice**

_____
**BRIANA H. ZAMORA, Justice**